[No. 9690.    Department One.    January 10, 1912.]

SEATTLE AUTOMOBILE COMPANY, *Appellant*, v.
F. S. STIMSON, *Respondent*.[1]

APPEAL—PRESERVATION OF GROUNDS—EXCEPTIONS.  One general exception to separate findings given some of which are correct, and to requests for separate findings refused, is insufficient to secure a review of the evidence; and the statement of facts will be considered only as to the rulings of the court on the admission and exclusion of the evidence.

WITNESSES—EXAMINATION—LEADING QUESTIONS.  It is discretionary to permit leading questions.

EVIDENCE—LETTERS—COPIES.  Copies of letters are inadmissible where there was no attempt to procure the production of the originals.

APPEAL—REVIEW—HARMLESS ERROR.  It is harmless to exclude the answer to a question which would not have changed the result.

PAYMENT—CONDITIONS—CONTRACTS—CONSTRUCTION.  In an action to recover a balance due on account, there is sufficient evidence of payment in full, where it appears that the plaintiff traded to the defendant land for an automobile owned by him, in consideration of which it was agreed that the balance due on the account should not be paid "until and unless" the land was sold for at least $2,000, and if the land was not sold for said sum, that the exchange should be in full satisfaction of the claim; and there can be no recovery where the court finds that due diligence was used to sell the land but it could not be sold for $2,000 or any other sum; since the payment was conditioned wholly and finally upon the sale of the land.

Appeal from a judgment of the superior court for King county, Prigmore, J., entered April 21, 1911, upon findings favorable to the defendant, in an action on account, after a trial before the court without a jury.   Affirmed.

*J. L. Waller*, for appellant.

*Chas. F. Munday*, for respondent.

GOSE, J.—This is a suit to recover the balance due upon an account for goods sold and delivered by the plaintiff to

[1]Reported in 120 Pac. 73.

defendant.    The alleged balance due is $1,013.95.    A judg-
ment was entered in favor of the plaintiff for $33.50, and it
has appealed.

It is admitted that, between the 9th day of January, 1907,
and the 19th day of August, 1908, the appellant sold and
delivered to the respondent automobiles and automobile sup-
plies of the value of $16,574.15 and that the respondent
paid thereon $15,500.20.    The contention of the respondent
is that his obligation to pay the balance of the account in
excess of the judgment was postponed in the manner and
form stated in the findings of the court hereafter set forth.

The respondent has moved to strike the statement of facts
because of the insufficiency of the exceptions.    The court
made four findings of fact, separately numbered and stated.
The exception to the findings is in the following language:

"The plaintiff herein excepts to the findings of fact en-
tered in the cause for the reason that the same are contrary
to the evidence in the case."

The appellant submitted seven findings, which were also sep-
arately numbered, and which were refused by the court.    It
reserved a like general exception to the refusal of the court
to make these findings.    Such an exception has been held in-
sufficient in a uniform line of decisions of this court.    *Sno-
homish River Boom Company v. Great Northern R. Co.*, 57
Wash. 693, 107 Pac. 848; *Yakima Grocery Co. v Benoit*,
56 Wash. 208, 105 Pac. 476; *Fender v. McDonald*, 54 Wash.
130, 102 Pac. 1026; *Horrell v. California etc. Assn.*, 40
Wash. 531, 82 Pac. 889; *Smith v. Glenn*, 40 Wash. 262, 82
Pac. 605; *Bringgold v. Bringgold*, 40 Wash. 121, 82 Pac.
179; *Lilly v. Eklund*, 37 Wash. 532, 79 Pac. 1107; *Peters
v. Lewis*, 33 Wash. 617, 74 Pac. 815; *Payette v. Willis*, 23
Wash. 299, 63 Pac. 254.    There being no specific excep-
tions to the findings, and some of them being admittedly cor-
rect, the exceptions were insufficient.    The motion to strike
the statement will be denied, but the objection to its consid-
eration will be sustained excepting as to the rulings of the

court in admitting and excluding evidence. *Lilly v. Ek-lund, supra.*

It is first suggested that the court erred in permitting the respondent's counsel to ask a leading question. If the question was leading, which may well be doubted, the matter was within the sound discretion of the court.

The court refused to admit in evidence copies of certain letters written by the appellant to the respondent. This is assigned as error. The ruling was correct, as there had been no attempt to procure the production of the original letters.

The appellant's counsel propounded the following question to one of his witnesses: "Now what did the company [meaning the appellant] get out of that Stimson deal?" An objection to the materiality of the question was sustained. The ruling is assigned as error. The point is without merit. As we shall see later, an answer would not have changed the result.

The court found that the appellant, a corporation, was engaged in the business of buying, selling, dealing in, and storing new and second hand automobiles and automobile supplies, and dealing in and doing all things pertaining to and usually done in and about the business of a garage and automobile agency; that between the dates heretofore stated, it sold its goods to the respondent and received payments in the sums respectively stated. It further found:

"That on to wit, the 10th day of August, 1908, prior to the commencement of this action, the defendant, being then the owner of a second hand automobile, made and entered into an oral agreement with the plaintiff, who had said automobile for sale, under and by the terms of which agreement the said plaintiff made an exchange of said automobile for a tract of land, which said tract of land was conveyed to this defendant and accepted by him in exchange for said automobile upon and subject to the express condition and agreement between the defendant and the plaintiff that the bill which the said plaintiff had against the defendant at that

time amounting to $980.45 should not be presented for pay-
ment nor paid *until and unless* this defendant was able to
and did sell said land for the sum of at least $2,000; that
since receiving a deed to said land said defendant has used
his best endeavors to sell said land, and has used his best en-
deavors in various ways to dispose of the same for said sum
of $2,000, but has not been able to sell said land or to dis-
pose of the same *for said sum, or any other sum;* that said
land is not worth as much as $2,000, and cannot be sold or
disposed of for that sum; that it was understood and agreed
at the time of the said transaction and the making of said
exchange between the plaintiff and this defendant, and it
was a part of said agreement that unless said land could be
sold or disposed of *for at least $2,000, the said exchange
should be in full settlement, satisfaction and discharge of the
claim set up in the amended complaint herein,*"
except the sum of $33.50, for which the appellant was en-
titled to a judgment under the admissions in the pleadings.
The writer has italicized the words in the finding quoted.

The appellant further contends that the findings of the
court did not warrant the judgment. The precise point
made is that, where there is a debt due, and it is agreed that
it shall be paid upon the happening of a future event and
the event does not happen, the law implies a promise to pay
within a reasonable time. The following authorities are re-
lied upon as upholding this view: *Williston v. Perkins,* 51
Cal. 554; *Chadwick v. Hopkins,* 4 Wyo. 379, 62 Am. St.
38; *Randall v. Johnson,* 59 Miss. 317, 42 Am. Rep. 365;
*Sears v. Wright,* 24 Me. 278; *Nunez v. Dautel,* 19 Wall.
560; *Busby v. Century Gold Min. Co.,* 27 Utah 231, 75 Pac.
725; *Crooker v. Holmes,* 65 Me. 195, 20 Am. Rep. 687;
*Noland v. Bull,* 24 Ore. 479, 33 Pac. 983; *Page v. Cook,* 164
Mass. 116, 41 N. E. 115, 49 Am. St. 449, 28 L. R. A. 759;
*Works v. Hershey,* 35 Iowa, 340; *Capron v. Capron,* 44 Vt.
410.

In the *Williston* case, certificates were given by the de-
fendant which recited that the holders were entitled to receive
a stated sum of money when a certain schooner in course of

construction should be sold. Suit was brought upon the certificates before the vessel was sold. The court said that the defendants were entitled only to a reasonable time in which to finish and sell the schooner.

In the *Chadwick* case, the defense interposed was that payment of the plaintiff's demand was to be made "as soon and fast as they [the defendants] were able financially to do so without sacrificing their interest in or the property of said North Crow Land and Cattle Company," and that the event named had not arrived. The court held that the agreement allowed only a reasonable time in which to make payment, and that it was not a sacrifice of property to sell it at the market price.

In the *Randall* case, the contract was for the payment of the rigging of the vessel ninety days after its first return trip. The schooner was lost at sea on its first voyage. The court held that the money promised became due ninety days after the expiration of the period of time usually required for the return trip of the schooner.

In the *Sears* case, the note sued upon was made payable "from the avails of the logs bought, of Martin Mower, when there is a sale made," and it was held that the contract contemplated a sale of the logs within a reasonable time. In the *Nunez* case the instrument sued upon was payable "as soon as the crop can be sold or the money raised from any other source." This was held to create an obligation to pay within a reasonable time. In the course of the opinion it was said: "Payment was not conditional to the extent of depending wholly and finally upon the alternatives mentioned."

In the *Busby* case, the defendant agreed to repay the sum of money advanced "from the first profits of the mine." The court said that, when the money was loaned, the debt was created and became absolute, and that the event agreed upon "merely fixes the happening of such an event as a convenient time for making the payment, and in case no profit

should be realized the law implies a promise to pay within a reasonable time."

In the *Crooker* case the promise was to pay the amount stated in the instrument "when I sell my place where I now live in Oxford, Maine." This was held to create an obligation to sell within a reasonable time. In the *Noland* case there was a written obligation to pay a fixed sum "when the sale of the property known as the Stephens ranch shall be accomplished, the said place to be sold for not less than $2,500." In construing the instrument, the court said:

"The defendant promises to pay the five hundred dollars when the sale of the property shall be accomplished for a specified sum. There is a present debt, but its payment is postponed to a future time; yet the debt nevertheless exists. The defendant promises or undertakes to sell the property for the sum specified that he may discharge his indebtedness, and if he fails to do so, or is unable to sell the property, such indebtedness becomes due and payable within a reasonable time."

The court, however, adverts to the fact that the agreement is not "that the defendant will pay such amount *if* he succeeds in selling the ranch for such price." In the *Page* case, the stipulation was to pay "whenever payor and payee mutually agree." The court said that this language means that the note was to be paid "when and after the payor ought reasonably to have agreed." In the *Works* case, the maker agreed to pay the note "on demand . . . when convenient." The court said, construing the quoted words together, that an obligation was created to pay within a reasonable time. In the *Capron* case, the note was payable one year from date, with the added condition that "if there is not enough realized by good management in one year, to have more time to pay in the manufacture of the plaster bed on Stearns' land." This was construed to give the maker a reasonable time in which to pay after the expiration of the year in case he failed to realize enough from the plaster bed to enable him to pay within a year.

It is obvious that none of these cases are applicable to the facts found by the court. There were no negative words in any of these contracts. As we have seen, the absence of such words was pointed out in the *Nunez* and *Noland* cases. The contract here involved was that the item in controversy was not to be paid "until and unless" the property was sold for at least $2,000," and that unless the land could be sold for "at least" that sum, "the said exchange should be in full settlement, satisfaction, and discharge of the claim." In other words the payment was conditioned "wholly and finally" upon the alternative mentioned. The court expressly found that, although the respondent had used due diligence, he had not been able to effect a sale for $2,000, or any other sum. It is obvious from a reading of this language that there can be no recovery unless we rewrite the contract for the parties. It is not a question of construction, but rather a question of giving effect to words of an undoubted meaning.

"Parties may adopt any event as fixing the time for their obligations to mature, just as they may fix a date therefor." *Eaton v. Richeri,* 83 Cal. 185, 23 Pac. 286;

See, also, 9 Cyc. 615, 616, 700; *Lyman v. Northern Pac. Elevator Co.,* 62 Fed. 891; *Congdon v. Chapman,* 63 Cal. 357.

In the *Congdon* case a purchaser of mining stock agreed to pay for it "from the first moneys which can be realized from the sale of any stock of said company owned or controlled by him. . . . and . . . agrees to use all reasonable efforts to realize on the stock of said company owned or controlled by him without unnecessary delay." The trial court found that the defendant used reasonable diligence and made reasonable efforts to effect a sale of the stock, but that he had not been able to sell any of it. It was held upon appeal that, "under such circumstances, to hold the defendant liable in this form of action would be to make and enforce between the parties a contract essentially different from

the contract that they themselves made." We think the same might have been said in the *Noland* and *Busby* cases, where the court reached a different conclusion.

From what has been said, it follows that the inquiry as to what the appellant got out of the trade was immaterial. It induced the respondent to make the exchange upon certain express conditions which have not been fulfilled. The contract was based upon a sufficient consideration; the parties were competent to contract and the contract is not immoral or illegal. It should therefore be enforced.

The judgment is affirmed.

PARKER, MOUNT, and FULLERTON, JJ., concur.